# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HO-MAN LEE, <br><br> v. <br><br> UNITED STATES OF AMERICA, | Civ. No. 17-11265 (KM) <br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Ho-Man Lee pleaded guilty to conspiracy to obtain fraudulent driver's licenses for use in immigration proceedings. He later moved to withdraw his plea, and, after an evidentiary hearing, I denied that motion. *United States v. Ho-Man Lee* (*Lee I*), Crim. No. 13-29, 2015 WL 1954600 (D.N.J. Apr. 28, 2015). The Third Circuit affirmed. *United States v. Ho-Man Lee* (*Lee II*), 664 F. App'x 126 (3d Cir. 2016).

Lee has completed the custodial portion of his sentence. (*See Lee I*, DE 201.)[1] Proceeding *pro se*, he now moves pursuant to 28 U.S.C. § 2255 to vacate his guilty plea and sentence. (DE 1.) He also moves to amend his original motion. (DE 6.) The Government opposes both motions. (DE 8.) For the following reasons, the motions are **DENIED**, and the Court will deny a certificate of appealability.

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entries in this proceeding

*Lee I*, DE _ = docket entries in the criminal proceeding (Crim. No. 13-29)

Mot. = Lee's § 2255 Motion (DE 1)

Lee Br. = Lee's Supplemental Brief to his § 2255 Motion (DE 2)

Mot. to Amend = Lee's Motion to Amend (DE 6)

Opp. = The Government's Opposition to Lee's Motions (DE 8)

Reply = Lee's Reply Brief in Support of his Motions (DE 11)

I do not unduly repeat here the findings of fact and legal analysis of my prior decision in *Lee I*. It is incorporated here by reference, and should be read as necessary background to this Opinion.

## I. BACKGROUND

### A. Criminal Proceeding

The prior opinions in *Lee I* and *II* more thoroughly recount Lee's criminal case. I incorporate them and reprint extracts relevant to the current motions:

> Lee is a native of South Korea, who was admitted to the United States as a Lawful Permanent Resident in the late 1990s. In 2007, he met a man named Han Chul Na. They became friends, and, according to Lee, in 2008, Na requested Lee's assistance in procuring information on criminal activity in the Korean community. Per Lee, Na indicated he was a part-time agent for the United States Immigration and Customs Enforcement Office (ICE) and claimed he needed a "big case" to have his contract renewed and to obtain full-time employment with ICE. Lee maintains that Na showed him a badge, handcuffs, and a business card listing Na as "Director" of Homeland Security. Lee agreed to help and began providing information on a number of criminal organizations, including ones involved in financial fraud, illegal gambling, and prostitution.
>
> According to Lee, in 2011, Na instructed him to infiltrate a document-fraud conspiracy administered by a man named Oscar Park, in which capacity Lee assisted Park in fraudulently obtaining driver's licenses using forged documentation. Lee received $500 for each issued license, which he claims to have donated to a scholarship. At some point in 2012, Lee left Park's enterprise and began an operation with Na that, like Park's organization, helped undocumented aliens fraudulently obtain driver's licenses.
>
> On June 27, 2012, Lee was arrested for his role in Park's document-fraud conspiracy. On January 7, 2014, a week before trial was scheduled, Lee pleaded guilty. One year later, he filed a motion to withdraw his guilty plea, arguing that he lacked the necessary mental state to commit conspiracy because he believed he was assisting Na as a government agent . . . .

*Lee II*, 664 F. App'x at 126–27 (internal record citations omitted).

I denied Lee's motion after a three-day evidentiary hearing. *Lee I*, 2015 WL 1954600, at *1. I explained that (1) the government-agent defense[2] was implausible based on the facts in the record, as well as Lee's and Na's patent credibility problems; and (2) any evidence to pursue the defense was available to Lee prior to his plea. *Id.* at *10–17.

Lee appealed, and the Third Circuit affirmed in a signed opinion. *Lee II*, 664 F. App'x at 128–30. The Court explained that (1) I properly analyzed the record to determine whether Lee's assertion of innocence based on the government-agent defense had factual support, and (2) evidence, in particular the potential testimony of Na himself, was adequately available to Lee to use in support of his defense prior to his plea. *Id.* The Court also rejected as forfeited certain claims raised for the first time on appeal: that the Government failed to disclose material exculpatory evidence, and that I erred in denying a motion for continuance (which he never filed). *Id.* at 129–30.

### B. Post-Conviction Proceedings

On November 8, 2017, Lee filed the present § 2255 motion. In his original motion, he raised four grounds for relief, (1) innocence, (2) ineffective assistance of counsel, (3) non-disclosure of exculpatory evidence, and (4) an apparent authority defense. (Mot. at 5–9.) About a month later, he filed a supplemental brief expanding on his grounds for relief. (Lee Br.) Months after that, in October 2018, he moved to amend his original motion to add additional claims. (Mot. to Amend.) Having completed the custodial portion of his sentence, he is on supervised release in the District of Maryland.

---

[2] For simplicity, I refer to the argument underlying Lee's motion to withdraw his guilty plea as the "government-agent defense." This concept, however, is not truly an affirmative defense, but rather a means to convince the jury that the Government has not proven beyond a reasonable doubt that a defendant possessed the requisite criminal intent. *See United States v. Alvarado*, 808 F.3d 474, 486 (11th Cir. 2015).

## I. DISCUSSION

### A. Original Motion

I begin with Lee's original § 2255 motion and supplemental brief, which the Government concedes were timely filed. (Opp. at 12.) Section 2255 provides that a federal inmate "may move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is available only when the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and presents exceptional circumstances . . . ." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (cleaned up).

Nonetheless, "the grounds for [a § 2255] motion are narrow." *United States v. Braddy*, 837 F. App'x 112, 115 (3d Cir. 2020). "[I]ssues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion . . . ." *Travillion*, 759 F.3d at 288. "In addition, issues which should have been raised on direct appeal may not be raised with a § 2255 motion." *Id.* at 288 n.11. Those exceptions, however, leave open claims based on ineffective assistance of counsel as valid grounds for a § 2255 motion. *Braddy*, 837 F. App'x at 115; *see Massaro v. United States*, 538 U.S. 500, 504 (2003). And as a practical matter, movants can use ineffective-assistance claims as a vehicle for substantive claims that might otherwise be defaulted. *See Travillion*, 759 F.3d at 288 ("While issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion, they may, however, be used to support a claim for ineffectiveness." (citations and footnote omitted)). Otherwise, the movant may raise a new claim "only if [he] can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quotation marks and citation omitted).

A court must hold an evidentiary hearing to decide a § 2255 motion "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Scripps*, 961 F.3d 626,

4

631–32 (3d Cir. 2020) (cleaned up); *see also* 28 U.S.C. § 2255(b). In that respect, Lee's case is out of the ordinary, because most of his grounds for relief relate to his government-agent defense, as to which the Court has already held a three-day evidentiary hearing and found facts contrary to Lee's position. As a result, the "records of the case" are robust enough to conclusively decide his motion.

### 1. Innocence

As his first ground for relief, Lee raises an "innocence" claim. (Mot. at 5.) His supplemental brief, however, makes it clear that what he seeks is (again) to withdraw his guilty plea so he can pursue a government-agent defense. (Lee Br. at 7, 11–12.)[3] Because that issue was resolved in a prior ruling which was upheld on direct appeal, it cannot provide relief via a § 2255 motion. *Travillion*, 759 F.3d at 288.

### 2. Ineffective Assistance of Counsel

Lee primarily moves to vacate his sentence on the ground that he received ineffective assistance of counsel. (Lee Br. at 15–18; Reply at 13, 17.) The Sixth Amendment guarantees criminal defendants "[t]he right to counsel [which] includes 'the right to the effective assistance of counsel.'" *Garza v. Idaho*, 139 S. Ct. 738, 743 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To show ineffective assistance in a case where a defendant pleaded guilty, the defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985). Courts considering § 2255 motions based on ineffective assistance of counsel tend to focus on the second, "the prejudice prong," which is more

---

[3] Lee does not attempt to argue the actual-innocence standard necessary to excuse procedural default. *Bousley*, 523 U.S. at 622; *Sweger v. Chesney*, 294 F.3d 506, 522–23 (3d Cir. 2002). His claim here is more that he wants a new trial so he can present a defense he thinks is meritorious.

objective and does not require delving into the thought processes of counsel. *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005); *see also Travillion*, 759 F.3d at 294 (failure to show prejudice supports denial of a § 2255 motion).

In his original brief, Lee identified six examples of ineffective assistance of counsel: (a) he kept having to change attorneys due to his dissatisfaction, (b) one attorney did not move to dismiss the indictment, (c) one attorney failed to move for a continuance when he received discovery, (d) one attorney used Lee's wife as a translator, (e) his attorneys did not prepare for trial, and (f) no attorney raised a competence issue. (Lee Br. at 15–18.) I discuss each, but none has merit.

### a. Change of Attorneys

Lee argues, in one sentence, that "the fact that [he] kept on changing his [attorneys] in each and every stage of his case reflects his [dissatisfaction] with each." (Lee Br. at 15.)

"[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation . . . ." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). While Lee may have been subjectively dissatisfied with one or more of his former attorneys, the test is an objective one. He has not alleged how the attorneys' conduct, or the change in attorneys, prejudiced him.[4] Moreover, the record precludes any finding that the change in attorneys affected the plea. During the plea colloquy, Lee agreed that he was "fully satisfied with the representation and advice given to [him] in this case by [his] attorney." *Lee*, 2015 WL 1954600, at *7. As a result, even if Lee had alleged prejudice, I would not be required to accept allegations that are "clearly frivolous on the basis of the existing record." *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008). Given the failure to establish prejudice and the plea

---

[4] Moreover, it cannot be the case that a criminal defendant can engineer a self-proving claim of ineffective assistance simply by firing his attorney(s). The standard requires a showing of subpar performance and actual prejudice.

colloquy, further evidentiary development is not needed. *United States v. Eakman*, 378 F.3d 294, 302 (3d Cir. 2004) ("[A] prisoner is not entitled to a hearing unless there is some basis in the record to support the prisoner's contention . . . ."). Thus, the record conclusively shows that Lee would not be entitled to relief based on a claim arising from his voluntary change of attorneys.

### b. Indictment/Multiplicity

Lee argues that his counsel should have moved to dismiss the superseding indictment as multiplicitous. (Lee Br. at 15–16.) Because the Fifth Amendment protects "against multiple punishments for the same offense," an indictment may not charge a single offense in separate counts and thereby "risk[] subjecting a defendant to multiple sentences." *United States v. Hodge*, 870 F.3d 184, 193 (3d Cir. 2017) (citations omitted). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 194 (citation omitted). The superseding indictment charged Lee with one count of conspiracy to unlawfully produce driver's licenses (Count 1) and three counts of unlawfully producing a driver's license, with each of these three counts referencing production to a different individual (Counts 2–4). (*Lee I*, DE 104 at 1–9.)

There is no multiplicity problem between the conspiracy count and the other three counts because conspiracy charges are different from charges for substantive crimes. *See United States v. Salahuddin*, 765 F.3d 329, 341 (3d Cir. 2014) ("Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes." (citation omitted)); *United States v. Nolan*, 718 F.2d 589, 594, n.4 (3d. Cir. 1983) (charging conspiracy and substantive crime separately did not create multiplicity problem).

There is also no multiplicity problem between the three substantive counts because each involves a separate transaction. Usually, separate

transactions represent separate crimes, with their own facts. *See United States v. Schwartz*, 899 F.2d 243, 248 (3d Cir. 1990) (two deposits could each support separate charges for bank fraud "because in making each deposit Schwartz was executing his scheme to defraud"). Moreover, the bottom-line question in a multiplicity challenge is determining what conduct Congress intended to criminalize. *Hodges*, 870 F.3d at 193–94. The statute underlying Counts 2, 3, and 4 makes it a crime for a person to "knowingly and without lawful authority produce[] *an* identification document . . . or *a* false identification document." 18 U.S.C. § 1028(a)(1) (emphases added). By using "a" or "an," thereby denoting "one," the statutory language indicates that each document produced by a defendant is a violation. Each such false document is an acceptable unit of prosecution. Thus, the Government could charge three counts under § 1028(a)(1) for three different documents.

Because the indictment was not multiplicitous, Lee cannot show that any failure by counsel to move to dismiss the indictment was objectively unreasonable or, as necessary for a showing of prejudice, that such a motion would have resulted in a dismissal. *See Johnson v. United States*, Civ. No. 10-2984, 2013 WL 1007242, at *3–4 (D.N.J. Mar. 12, 2013).

### c. Continuance

Lee argues, in a sentence, that his attorney should have moved for a continuance after receiving Jencks material relating to Na. (Lee Br. at 16.)

"The Jencks Act obliges the Government to disclose any witness statement 'in the possession of the United States which relates to the subject matter as to which the witness has testified.'" *United States v. Georgiou*, 777 F.3d 125, 142 (3d Cir. 2015) (quoting 18 U.S.C. § 3500(b)). Although Lee does not identify the specific material at issue, he is no doubt referring to the discovery relating to Na provided by the Government approximately twenty-one days before the scheduled trial date. Ten days after the disclosure of that material, the Government and Lee arrived at the plea agreement. *Lee I*, 2015 WL 1954600, at *6–7.

The record belies a finding that, had counsel moved for a continuance, Lee "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. For starters, Lee's counsel had twenty-one days prior to trial to review the material. Courts have found less time sufficient to prepare for trial. *United States v. Fuller*, 665 F. App'x 248, 250–51 (4th Cir. 2016) (per curiam) (1,800 pages five days before trial). There is no indication that this material was so voluminous or complicated that counsel could not have digested it in time.

To boot, the fact that Lee voluntarily reached a plea agreement with over a week left before trial strongly suggests that he did not need more time to consider the material. Indeed, at his plea colloquy, Lee stated that he understood he could "issue subpoenas or compulsory process for witnesses to testify in [his] defense." *Lee I*, 2015 WL 1954600, at *8. By pleading guilty, Lee knowingly and voluntarily abandoned his right to further develop facts based on the Jencks material. He cannot now claim that he would have done things differently if he had had more time.

Moreover, Lee's claim is fundamentally hard to understand when one considers the purpose and function of Jencks material. The Government was not obliged to provide the material before trial because the Jencks Act only requires disclosures once a witness has testified on direct examination. 18 U.S.C. § 3500(b). Accordingly, Lee was already given much more time with the material than was legally required. What is more, Jencks material serves the limited and different purpose "to provide the defendant with an opportunity to review the witness's statements for any possible inconsistencies that he might use to impeach the witness." *United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012). Lee has argued that he wanted to rely on Na to establish his government-agent defense. Thus, it is hard to see how he was prejudiced by any inability to more closely review material that could *impeach* Na.

Finally, by the time of his plea, Lee had already interviewed Na through a private investigator. *Lee I*, 2015 WL 1954600, at *6. He thus had facts in his

9

possession that informed whether to pursue the government-agent defense at trial. As a result, it is unreasonable to think that more time to review the Jencks material would have changed his decision to plead guilty when he already had the necessary facts. *See United States v. Celis*, 608 F.3d 818, 840 (D.C. Cir. 2010) (per curiam) (no prejudice when court denied a continuance to review Jencks material because the defendant had earlier opportunities to investigate the witness).[5] Thus, the record conclusively shows that Lee was not prejudiced by a failure to move for a continuance.

### d. Translator

Lee argues that his attorney should not have relied on his wife to translate the plea agreement and negotiations. (Lee Br. at 17.) For prejudice, Lee would need to show that he mistakenly agreed to the plea based on an incorrect translation of its content or statements in the negotiation. *See Gimenez v. Cameron*, Civ. No. 14-6255, 2015 WL 1609344, at *13 (E.D. Pa. Mar. 10, 2015). He makes no such allegation. In fact, the record precludes any such claim.

Critically, at the guilty plea hearing, Mr. Lee appeared with the aid of a duly sworn, qualified interpreter. (Transcript of plea, *Lee I*, DE 157 at 2.) The terms of the plea agreement were explained and translated on the record, and Lee acknowledge that he understood. (*Id.* at 11–14.) The Magistrate Judge ensured that Lee's waiver of his rights was knowing and informed. Lee admitted his guilt of every element of the offense. Lee never asserted that he misunderstood the proceedings. He testified that he had lived in the United States for fifteen years and stated that he was able to read and write in English. And several times during the plea colloquy, he sought and received clarification. *Lee I*, 2015 WL 1954600, at *13. Courts have rejected similar claims on similar records. *Guzman v. Rozum*, Civ. No. 13-7083, 2017 WL

---

[5] In addition, as explained in Section II.A.2.e, *infra*, even if Lee had developed and pursued the government-agent defense at trial using Na, it is unlikely that he would have been successful. For this reason, too, prejudice is highly unlikely.

1344391, at *12 (E.D. Pa. Apr. 12, 2017); *Villegas v. D'Ilio*, Civ. No. 15-3420, 2016 WL 706195, at *9 (D.N.J. Feb. 22, 2016); *United States v. Nguyen*, Civ. No. 12-5873, 2015 WL 13711012, at *4 (E.D. Pa. Apr. 10, 2015); *United States v. Hernandez*, 994 F. Supp. 627, 630–31 (E.D. Pa. 1998).

Thus, the record conclusively shows that Lee was not prejudiced by the choice of translator in connection with meetings prior to the entry of the plea.

### e. Failure to Prepare for Trial

Lee's original brief argued that his attorneys failed to prepare for trial. (Lee Br. at 17.) His reply brief clarifies that he received ineffective assistance of counsel specifically because counsel persuaded him to abandon a government-agent defense and instead to plead guilty. (Reply at 19.)

When a defendant claims that counsel failed to pursue a defense, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59; *see also United States v. Kmet*, 806 F. App'x 109, 114 (3d Cir. 2020). "[P]redictions of the outcome at a possible trial . . . should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill*, 474 U.S. at 59–60 (quoting *Strickland*, 466 U.S. at 695); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000) (describing the *Hill* inquiry as whether the defense would "lead[] a rational defendant to insist on going to trial").

When deciding Lee's motion to withdraw his plea, I analyzed the strength of his government-agent defense. That analysis relied on facts developed in a three-day evidentiary hearing, as well as the facts as they stood prior to the plea. *Lee I*, 2015 WL 1954600, at *10–11. I found that the facts did not support his defense. Namely, I explained that (1) Lee's education and military-intelligence experience "raise[d] questions about his self-portrayal as Na's gullible victim," (2) Lee's testimony tended towards "a self-justifying narrative" instead of establishing believable facts, (3) Na would not be a credible witness because he "repeatedly proved to be untruthful and manipulative, particularly in his dealings with the government" plus he "had an evident interest in

11

helping his friend defeat the charges," (4) Lee pocketed profits from his dealings with Na, which is inconsistent with an "'undercover agent' scenario," (5) Lee reduced his rates for family and friends, which is likewise inconsistent, (6) a reasonable person would have observed that much of Na's conduct was not consistent with that of a government agent, (7) Na's alleged claims to Lee were generally not plausible, and (8) Lee himself committed acts that were criminal in nature, thus going beyond his alleged role as an undercover agent. *Id.* at *2–3, 10–11. The Third Circuit "perceive[d] no abuse of discretion" in this analysis.

Nor is it merely speculative to believe that the government-agent defense surely would have exploded at trial. At the evidentiary hearing, Lee called Na himself to testify. Na admitted on the witness stand that he was not "infiltrating" the Park organization as part of a government sting, but rather was using what he learned to set up his own, independent fraud operation. Fatally, Na testified that he told Lee he was doing this and continued to use Lee's services in the new operation. *Lee I*, 2015 WL 1954600, at *11.

For these same reasons, it would not have been rational for a defendant to go to trial here and rely on a government-agent defense. Likewise, even if Lee had proceeded, it is unlikely that the defense would have succeeded. The defense was plainly contradicted by other facts, and the two necessary witnesses (Na and Lee) were not credible. Thus, Lee was not prejudiced by counsel's failure to pursue the defense at trial. *See United States v. Solofa*, 745 F.3d 1226, 1230 (D.C. Cir. 2014) (no prejudice shown and no need for further evidentiary development when the record established that the defendant had no "viable" defense to pursue).

What the defense lacked in factual support, it likewise lacked in legal support. Courts consider whether case law at the time of a defendant's plea supported a defense. *Kmet*, 806 F. App'x at 114. The government-agent defense is not clearly recognized in this Circuit. Only the Eleventh Circuit has recognized that, to negate the intent element of an offense, a defendant may show that he "genuinely believed that the criminal acts he performed were done at the direction, and with the permission, of an appropriate governmental

agency." *United States v. Alvarado*, 808 F.3d 474, 486–87 (11th Cir. 2015). This "defense," however, has been rejected or criticized by other Courts of Appeals. *United States v. Baez*, 983 F.3d 1029, 1042 (8th Cir. 2020); *United States v. Galecki*, 932 F.3d 176, 189–90 (4th Cir. 2019); *United States v. Giffen*, 473 F.3d 30, 43 (2d Cir. 2006). And for good reason: the defense could "swallow the actual public authority and entrapment-by-estoppel defenses" and "grant any criminal *carte blanche* to violate the law should he subjectively decide that he serves the government's interests thereby." *Giffen*, 473 F.3d at 43 (citation omitted). What is more, it appears that no court has ever applied the defense to an 18 U.S.C. § 1028 charge.[6] Given the lack of recognition of the defense and serious criticism of it, there is a strong likelihood that I would have rejected its application as a matter of law, particularly on these facts.[7] For this reason too, Lee was not prejudiced by counsel's advice to relinquish the defense in exchange for a favorable plea deal. *Kmet*, 806 F. App'x at 114.

### f. Competency Hearing

Finally, Lee argues that his attorneys knew that he had "some psychological issues" from his military service but never tested his competency or raised a competency issue to the Court. (Lee Br. at 18.) The record renders this argument frivolous. When Lee directly addressed the Court in his plea

---

[6] Still further, the Eighth Circuit held that the defense would not disprove a crime that only required a knowing mental state. *United States v. Juhic*, 954 F.3d 1084, 1089 (8th Cir. 2020). 18 U.S.C. § 1028(a)(1) is such a crime.

[7] Because what we deal with here is not an affirmative defense, it is more accurate to say that I likely would have excluded evidence or rejected jury instructions based on Lee's purported "innocent intent." *See Baez*, 983 F.3d at 1042 (upholding rejection of jury instructions). I note here that, when deciding the motion to withdraw Lee's plea, I only assumed for purposes of analysis that the defense was legally viable. *Lee I*, 2015 WL 1954600, at *10.

I here distinguish the actual public-authority defense, *i.e.*, that one was in fact acting at the behest of a public official, which is more widely recognized. Lee, after initially asserting a public authority defense, abandoned it for lack of evidence. *Lee I*, 2015 WL 1954600, at *1. Lee opted instead to argue that he *thought* his close friend and business associate, Na, was acting on behalf of the U.S. government.

colloquy, he stated that he had never been treated for mental illness. (DE 8-5 at 5:6–9.) He also signed a plea application stating that he did not "believe that at the present time I am mentally ill or mentally incompetent in any respect." (*Lee I*, DE 113 at 1.) He himself averred that he was competent. My own observation of his testimony (dating from after the entry of the plea) did not raise any concerns about competency. He suggests no basis upon which counsel should have known, in the face of his own denials, to pursue the competency issue.

### 3. Non-Disclosure of Exculpatory Evidence

Lee argues that the Government failed to disclose that Na was available to testify. (Lee Br. at 22.) "[T]he government violates the Constitution's Due Process Clause if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Turner v. United States*, 137 S. Ct. 1885, 1888 (2017) (quotation marks, citation, and emphasis omitted); *see also Brady v. Maryland*, 373 U.S. 83 (1963). Lee's claim fails for two reasons. First, he failed to raise this issue on direct appeal. *Travillion*, 759 F.3d at 288 n.11.[8] Second, this claim is just a *Brady* gloss on Lee's argument in his motion to withdraw his plea that Na's availability was a change in circumstance supporting a plea withdrawal.

After a hearing, I found factually that Na *was* available to Lee prior to the plea. Indeed, Lee's investigator interviewed Na. *Lee I*, 2015 WL 1954600, at *15. The Third Circuit agreed. *Lee II*, 664 F. App'x at 130. Thus, the claim is not supported by the record.

### 4. Apparent Authority Defense

Lee argues that he should be retried so he can present an "apparent authority defense," *i.e.*, he committed the criminal conduct in the belief that Na

---

[8] The Government argues that this claim fails because it was rejected on direct appeal. (Opp. at 44.) Although the Third Circuit considered a *Brady* claim raised by Lee, that claim focused on specific evidence regarding Na, not his general availability, which seems to be Lee's claim here. *Lee II*, 664 F. App'x at 129.

14

was a government agent. (Lee Br. at 20–21.) This is simply a rephrasing of his motion to withdraw his plea, which was denied, and that denial affirmed, because the defense was not plausible. He cannot now revive the defense through a § 2255 motion.

* * *

In sum, Lee's § 2255 claims are either barred or foreclosed by the record. His § 2255 motion will be denied.

### B. Motion to Amend

Lee moves to amend his § 2255 motion to add claims that one prosecutor was inconsistent in his representations to the Court regarding the relationship of Park and Na, and that the prosecutor withheld evidence on that issue. Lee packages these allegations as an ineffective assistance of counsel claim, asserting that his attorneys "should have been privy to these misstatements" and "not allow[ed]" them. (Mot. at Amend at 17–19.)

Section § 2255 motions must be filed, as relevant here, within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). When the Court of Appeals affirms a conviction, but the defendant does not petition the Supreme Court for a writ of certiorari, the conviction becomes final upon the expiration of the time allowed to file a certiorari petition (90 days). *Kapral v. United States*, 166 F.3d 565, 571 (3d Cir. 1999); *see also* Sup. Ct. R. 13.

Here, the Third Circuit entered judgment affirming Lee's conviction on November 3, 2016. (*Lee I*, DE 196.) Lee did not petition for a writ of certiorari, so the conviction became final on February 1, 2017. He filed his motion to amend in October 2018, more than a year after his conviction became final.

The claims in Lee's motion to amend are thus time-barred. Nonetheless, Lee can add "new claims" to his timely filed § 2255 motion if those claims "are tied to a common core of operative facts" as the original motion. *Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (citation omitted). But Lee cannot add a "new, untimely claim" if it is "supported by facts that differ in

both time and type from those the original pleading set forth." *Id.* (citation omitted).

The claims in Lee's motion to amend are different in time from the claims in his original motion. The former are largely based on representations during proceedings that are never even mentioned in the latter. That is, his motion to amend focuses on the prosecutor's statements at the arraignment, sentencing, and the hearing on the motion to withdraw the plea (Mot. to Amend at 6–17), whereas his § 2255 claim focused on counsel's assistance in and around plea negotiations (Lee Br. at 15–18). As such, the two motions are based on separate occurrences and do not relate to one another. *See Whitaker v. Superintendent Coal Twp. SCI*, 721 F. App'x 196, 202 (3d Cir. 2018) (claim concerning counsel's conduct at trial did not relate to claim concerning counsel's conduct before trial); *Sodano v. United States*, Civ. No. 14-7630, 2017 WL 6698705, at *2 (D.N.J. Feb. 16, 2017) (same).

The claims in the two motions also differ in type. While both raise ineffective assistance of counsel claims, the motion to amend is bottomed on a failure to object to prosecutorial misconduct (essentially). There is nothing in the original motion relating to prosecutorial misconduct; indeed, the particular prosecutor is not even mentioned. To the extent the motion to amend also raises a claim based on *Brady*, that claim seems to be based on certain emails to and from Na. (Mot. to Amend at 8, 11.) But in his original motion, (1) the ineffective assistance of counsel claim does not rely on counsel's failure to object to a *Brady* violation (*see* Lee Br. at 15–18), and (2) the separate *Brady* claim is based on a failure to disclose Na's general availability, not any specific emails (*id.* at 22). Thus, the claims in the two motions are based on different facts.⁹

---

⁹ Even if the new claims did relate back, they would fail because Lee does not attempt to explain how the prosecutor's conduct prejudiced him. For example, the emails, now characterized as *Brady* material, were in Lee's possession the whole time.

For these reasons, Lee's motion to amend does not relate back to his original § 2255 motion. The motion to amend is therefore denied.

## II. CONCLUSION

For the reasons set forth above, Lee's § 2255 motion and motion to amend will be denied.

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. 3d Cir. L.A.R. 22.1. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Lee has not made a substantial showing of denial of a constitutional right. This Court will not issue a certificate of appealability.

A separate order will issue.

Dated: May 5, 2021

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**